Citation Nr: 1132137 
Decision Date: 08/31/11 Archive Date: 09/07/11

DOCKET NO. 08-31 617 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Portland, Oregon


THE ISSUE

Entitlement to service connection for a right knee disability. 


REPRESENTATION

Appellant represented by: Oregon Department of Veterans' Affairs


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

A. R. Grasman, Counsel


INTRODUCTION

The Veteran served on active duty from January 1966 to July 1969. The Veteran subsequently served in the Army National Guard until 1982. 

This appeal comes before the Board of Veterans' Appeals (Board) from a July 2007 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Portland, Oregon. This appeal was remanded by the Board in March 2011 for additional development. The Veteran's initial claim also included the issue of entitlement to service connection for hearing loss in the right ear which was ultimately granted in a June 2011 rating decision. 

In December 2010, the Veteran testified in a Travel Board hearing in front of the undersigned Veterans Law Judge. The transcript of the hearing is associated with the claims file and has been reviewed.


FINDINGS OF FACT

1. The Veteran has been notified of the evidence necessary to substantiate his claim, and all relevant evidence necessary for an equitable disposition of this appeal has been obtained.

2. The competent evidence of record shows that the Veteran's current right knee disability did not manifest in service, did not manifest within one year after service and was not caused by or related to any disease, incident or injury in active service. 


CONCLUSION OF LAW

A right knee disability was not incurred in or aggravated by service; nor may it be presumed to be incurred therein. 38 U.S.C.A. §§ 1110, 1111, 1112, 1113 (West 2002); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2010).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), the VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2010). 

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a) (West 2002); 38 C.F.R. § 3.159(b) (2010); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper notice from VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 C.F.R. § 3.159(b)(1). This notice must be provided prior to an initial unfavorable decision on a claim by the agency of original jurisdiction (AOJ). Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

Here, the Veteran was sent a VCAA letter in March 2007 that addressed the notice elements and was sent prior to the initial AOJ decision in this matter. The letter informed the appellant of what evidence was required to substantiate the claim and of the appellant's and VA's respective duties for obtaining evidence. The appellant was also asked to submit evidence and/or information in his possession to the AOJ. This letter also included the notice provisions pertaining to how VA assigns disability ratings and effective dates as set forth in Dingess v. Nicholson, 19 Vet. App. 473 (2006). Therefore, the Board concludes that the requirements of the notice provisions of the VCAA have been met, and there is no outstanding duty to inform the Veteran that any additional information or evidence is needed. Quartuccio, 16 Vet. App. at 187.

VA also has a duty to assist the veteran in the development of the claim. This duty includes assisting the veteran in the procurement of service treatment records, pertinent medical records and providing an examination when necessary. 38 U.S.C.A. § 5103A (West 2002); 38 C.F.R. § 3.159 (2010). 

The Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the appellant. See Bernard v. Brown, 4 Vet. App. 384 (1993). The RO has obtained service treatment records, DD Form 214, Social Security Administration (SSA) records and VA medical records. The Veteran was provided an opportunity to set forth his contentions during the hearing before the undersigned Veterans Law Judge. A VA opinion with respect to the issue on appeal was obtained in March 2011. 38 C.F.R. § 3.159(c)(4). To that end, when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). Here, the Board finds that the VA opinion obtained in this case was sufficient, as it was predicated on a full reading of the Veteran's service and post-service VA medical records. It considers all of the pertinent evidence of record, the statements of the appellant, and provides an explanation for the opinion stated. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion with respect to the issue on appeal has been met. 38 C.F.R. § 3.159(c)(4). The Board further finds that the RO complied with its March 2011 Remand. Stegall v. West, 11 Vet. App. 268 (1998). 

Significantly, neither the appellant nor his representative has identified, and the record does not otherwise indicate, any additional existing evidence that is necessary for a fair adjudication of the claim that has not been obtained. Hence, no further notice or assistance is required to fulfill VA's duty to the appellant in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002).

The Board has thoroughly reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, all of the evidence submitted by the Veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claims. The Veteran must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (the law requires only that the Board address its reasons for rejecting evidence favorable to the Veteran).

After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the veteran. 38 C.F.R. § 4.3 (2010). If the evidence for and against a claim is in equipoise, the claim will be granted. A claim will be denied only if the preponderance of the evidence is against the claim. See 38 U.S.C.A. § 5107 (West 2002); 38 C.F.R. § 3.102 (2010); Gilbert v. Derwinski, 1 Vet. App. 49, 56 (1990). 

In this case, the Veteran claims he has a current right knee disability that is related to an injury received during a period of weekend training in the Army National Guard in May 1980. He refers to a May 17, 1980, service treatment note in which he was treated for an effusion of the right knee as evidence of an in-service injury.

The term "veteran" is defined as a person who served in the active military, naval, or air service, and who was discharged or released therefrom under conditions other than dishonorable." 38 U.S.C.A. § 101(2) (West 2002). The term "active military, naval, or air service" includes active duty, any period of active duty for training (ACDUTRA) during which the individual concerned was disabled or died from a disease or injury incurred or aggravated in line of duty, and any period of inactive duty training (INACDUTRA) during which the individual concerned was disabled or died from an injury incurred or aggravated in line of duty. 38 U.S.C.A. § 101(24) (West 2002); 38 C.F.R. § 3.6(a), (d) (2010). INACDUTRA includes duty, other than full-time duty, prescribed for the Reserves. 38 U.S.C.A. § 101(23)(A); 38 C.F.R. § 3.6(d).

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1110 (West 2002); 38 C.F.R. § 3.303(a) (2010). This may be shown by affirmative evidence showing inception or aggravation during service or through statutory presumptions. Id. 

To establish direct service connection for a claimed disorder, there must be (1) medical evidence of current disability; (2) medical, or in certain circumstances, lay evidence of in-service occurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the current disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999); see also Degmetich v. Brown, 104 F.3d 1328 (Fed. Cir. 1997); Brammer v. Derwinski, 3 Vet. App. 223 (1992). 

For the showing of chronic disease in service there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. See 38 C.F.R. § 3.303(b) (2010). If chronicity in service is not established, a showing of continuity of symptoms after discharge is required to support the claim. Id. 

Where a veteran served 90 days or more during a period of war or during peacetime service after December 31, 1946, and a chronic disease such as arthritis manifests to a degree of 10 percent within one year from date of termination of such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. § 1101, 1112, 1113, 1137 (West 2002); 38 C.F.R. §§ 3.307, 3.309 (2010). 

Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d) (2010).

Here, the Veteran has a current diagnosis of a right knee disability. Most recently, in a March 2011 x-ray there were mild degenerative joint changes in the right knee. 

The records obtained relating to the Veteran's National Guard service demonstrate that he was not on a period of active duty for training on May 17, 1980; however, they fail to confirm whether he was on inactive duty for training on that date. The Board notes that the records obtained after the Board remand also did not show that the Veteran was on active duty, particularly inactive duty for training, on May 17, 1980. Regardless of the Veteran's duty status, however, the remaining evidence of record does not show a chronic disability in service, continuity of symptomatology since service or a nexus between the current diagnosis and service. 

Initially, the Board notes that there is no medical evidence depicting symptoms of or a diagnosis of degenerative joint disease in the right knee within one year after separation from service, including the incident in May 1980. Therefore, service connection cannot be presumed. See 38 C.F.R. §§ 3.307, 3.309.

Additionally, although there is a current diagnosis, the service treatment records do not show a chronic disability in service. There was no reference to a right knee injury in the active duty records from 1966 to 1969. The only reference to a right knee injury was in the National Guard records in May 1980. Even after affording the Veteran the benefit of the doubt that this incident was incurred during a period that was eligible for VA benefits, there is no further reference to right knee pain or treatment after this incident. Therefore, a chronic disability was not shown to have been incurred in service. 

Further, the evidence of record does not show that there was continuity of symptomatology since service. After service, VA records do not show continuous treatment for right knee pain following service. In August 2009, an x-ray revealed some age related findings and an otherwise, unremarkable right knee. The Veteran testified in December 2010 that his knee did not begin to bother him until about 3 years ago. He testified that he did not have any symptoms of knee pain right after service or within a few years after service. In this regard, the Veteran is competent to report his symptoms and when they occur. See Charles v. Principi, 16 Vet. App. 370, 374- 75 (2002). Therefore, the Board finds that the evidence of record, including the Veteran's testimony, does not show that there was continuity of symptomatology of a right knee disability since service. 

Moreover, the competent evidence of record does not show a nexus between the current right knee disability and an incident in service. Initially, in the March 2011 VA Compensation and Pension Examination, the VA physician did not have the claims file to review. The physician considered the Veteran's military history, occupational history, medical history and social history. The Veteran reported that he currently experienced right knee pain. He reported that he did not have problems with his legs in service. In the National Guard, he reported that he was a platoon leader and in May 1980 he developed swelling in the right knee. He did not have trauma, puncture or twisting of the knee at that time. He developed other pains in his knees, ankles and joints during the 1980's and was told that he had asymmetrical polyarthritis, but was not treated for this condition. The Veteran reported that he continued in the National Guard until 1982 without physical limitations and without medical board proceedings or medical discharge. The Veteran reported that he had intermittent pains once a month or so in both knees and had a sudden severe pain in his right knee while walking in 2009. He experienced no twist or trauma and no catching or locking. After that incident, he had no other significant injuries to his right knee and had no significant problems with the knee as long as he kept his walking to under 3 miles. 

The VA physician reviewed the May 17, 1980 treatment record as well as subsequent VA medical records, including x-rays. The Veteran reported that he had no pain or problems in his right knee in the past year but that he would get right knee pain if he walked more than a mile or kneeled. He indicated that he could squat and take the stairs and did not have any current right knee symptoms or problems. After a physical examination, the VA physician's impression was no significant structural pathology was identified. The physician opined that it was more likely than not that the Veteran has age related changes as well as patellofemoral pain in his right knee. The examiner's rationale was that with the currently available information the Veteran's periarticular swelling documented in May 1980 appeared to be a different problem from his current knee problems. The physician noted that the Veteran's knee symptoms in 1980 were more likely as not related to asymmetric polyarthritis that he was diagnosed with in 1980 because he had no history of an event, injury or factors during military training in the National Guard that can be attributed to his knees. 

After obtaining an x-ray of the Veteran's right knee and reviewing the claims file, the VA physician submitted an Addendum in April 2011. The VA physician found no significant change in the diagnosis or assessment. The VA physician found that with the available information, the Veteran's periarticular swelling documented in May 1980 appeared to be a different problem from his current knee problem. The physician noted that the Veteran's knee symptoms in 1980 were more likely as not related to asymmetric polyarthritis that he was diagnosed with in 1980. He had no history of event, injury, twist or factors during military training or in the National Guard that can be attributed to his knees. The physician opined that the Veteran's current right knee symptoms were more likely than not secondary to his degenerative joint disease of the right knee joint and it would be speculation to attribute his current degenerative joint disease to his asymmetric polyarthritis of multiple joints in 1980 or to events or injuries in the National Guard. 

The Board acknowledges that the VA physician could not provide a nexus opinion without resorting to speculation after the claims file was reviewed. The VA physician, however, provided an explanation for his opinion in that the polyarthritis and the current diagnosis were different conditions. Further, there was no injury in service consistent with the diagnosis of degenerative joint disease of the right knee. See Jones v. Shinseki, 23 Vet. App. 382 (2010) (an examiner's conclusion that a diagnosis or etiology is not possible without resort to speculation is an opinion, and that the examiner must explain the basis for his or her conclusion before such opinion can be relied upon). Therefore, the Board finds that the VA physician's opinion is adequate. 

Based on the foregoing, the Board finds that the competent evidence does not show that there is a nexus between service and the current right knee disability. Although the Veteran contends his current right knee arthritis was caused by the May 1980 incident, the Board finds that this assertion is not sufficient to establish service connection. While the Board acknowledges that lay statements could, in certain circumstances, constitute competent nexus evidence, in the instant case, the Board finds that the question regarding the potential relationship between the Veteran's injuries in service and the current diagnosis to be complex in nature. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009), Woehlaert v. Nicholson, 21 Vet. App. 456 (2007) (although the claimant is competent in certain situations to provide a diagnosis of a simple condition such as a broken leg or varicose veins, the claimant is not competent to provide evidence as to more complex medical questions). As such, the Board finds the Veteran's statements regarding a nexus between his right knee disability and an incident in service to be of little probative value as he is not competent to opine on such a complex medical question. Specifically, where the determinative issue is one of medical causation, only those with specialized medical knowledge, training, or experience are competent to provide evidence on the issue. See Jones v. Brown, 7 Vet. App. 134, 137 (1994); Espiritu v. Derwinski, 2 Vet. App. 492 (1992). As such, the Board finds that the VA opinion is more probative than the Veteran's assertions. 

In summary, the Board has considered the available evidence of record, the Veteran's statements and afforded the benefit of the doubt to the Veteran. The evidence, however, does not show a chronic disability in service, continuity of symptomatology or a nexus between the current disability and service. As such, the Board finds that the evidence of record preponderates against the Veteran's claim for service connection. Therefore, service connection for a right knee disability is denied. See 38 U.S.C.A § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).


ORDER

Service connection for a right knee disability is denied. 



____________________________________________
John E. Ormond, Jr.
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs