Citation Nr: 1703144 
Decision Date: 02/02/17 Archive Date: 02/15/17

DOCKET NO. 05-37 821 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Louis, Missouri


THE ISSUE

Entitlement to service connection for diabetes mellitus type II, to include as secondary to medications prescribed for service-connected residuals of Ross River virus with multiple joint arthritis.


REPRESENTATION

Appellant represented by: Virginia A. Girard-Brady, Attorney at Law


ATTORNEY FOR THE BOARD

B. Elwood, Counsel





INTRODUCTION

The Veteran served on active duty from December 1972 to December 1975 and from April 1982 to July 1988.

This matter initially came before the Board of Veterans' Appeals (Board) from a December 2004 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Louis, Missouri. In that decision, the RO denied service connection for type II diabetes mellitus.

In August 2008, the Board denied the claim of service connection for type II diabetes mellitus. The Veteran appealed the Board's decision to the United States Court of Appeals for Veterans Claims (Court).

In July 2009, the Court set aside the Board's August 2008 decision and remanded the case for readjudication in compliance with directives specified in a July 2009 Joint Motion filed by counsel for the Veteran and VA.

In January 2010, July 2012, and November 2014, the Board remanded this matter for further development. 

In June 2015, the Board vacated and simultaneously re-issued its November 2014 remand.


FINDING OF FACT

The evidence is at least evenly balanced as to whether the Veteran has diabetes mellitus caused by medications taken for his service-connected residuals of Ross River virus with multiple joint arthritis.




CONCLUSION OF LAW

With reasonable doubt resolved in favor of the Veteran, diabetes mellitus is proximately due to or the result of service connected disease or injury. 38 U.S.C.A. §§ 1110, 1131, 5107(b) (West 2014); 38 C.F.R. §§ 3.303, 3.310 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

The Veterans Claims Assistance Act of 2000 as amended (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R §§ 3.102, 3.156(a), 3.159, 3.326(a) (2016). 

As the Board is granting the claim of service connection for diabetes mellitus, the claim is substantiated and there are no further VCAA duties. Wensch v. Principi, 15 Vet App 362, 367-68 (2001); see also 38 U.S.C.A. § 5103A(a)(2) (Secretary not required to provide assistance "if no reasonable possibility exists that such assistance would aid in substantiating the claim"); VAOPGCPREC 5-2004; 69 Fed. Reg. 59989 (2004) (the notice and duty to assist provisions of the VCAA do not apply to claims that could not be substantiated through such notice and assistance).

Analysis

Service connection will be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. § 1110, 1131; 38 C.F.R. § 3.303.

Service connection is provided for a disability which is proximately due to, the result of, or aggravated by a service-connected disability. Allen v. Brown, 7 Vet. App. 439 (1995); 38 C.F.R. § 3.310. VA has amended 38 C.F.R. § 3.310 to reflect that it will not concede aggravation unless certain additional conditions are met. 38 C.F.R. § 3.310 (b). As service connection for diabetes mellitus is not being granted on the basis of aggravation by a service-connected disability, it is not necessary to determine which version of 38 C.F.R. § 3.310 is applicable in this case.

In relevant part, 38 U.S.C.A. § 1154(a) (West 2014) requires that VA give "due consideration" to "all pertinent medical and lay evidence" in evaluating a claim for disability or death benefits. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009).

The United States Court of Appeals for the Federal Circuit (Federal Circuit) has held that "[l]ay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional." Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); see also Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006) ("[T]he Board cannot determine that lay evidence lacks credibility merely because it is unaccompanied by contemporaneous medical evidence").

Once evidence is determined to be competent, the Board must determine whether such evidence is also credible. See Layno v. Brown, 6 Vet. App. 465, 469 (1994) (distinguishing between competency ("a legal concept determining whether testimony may be heard and considered") and credibility ("a factual determination going to the probative value of the evidence to be made after the evidence has been admitted")).

Service connection may also be granted for a disease first diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

In this case, a January 2016 VA examination report reveals that the Veteran has been diagnosed as having type II diabetes mellitus. Thus, current diabetes has been demonstrated.

The Veteran contends that his diabetes mellitus is caused by the medication Celebrex which he has taken for treatment of his service-connected residuals of Ross River virus with multiple joint arthritis. The Court has held that a claim of service connection due to medication taken for a service connected disease or injury is a valid theory of entitlement. See, e.g., Wanner v. Principi, 17 Vet.App. 4, 8 (2003) (noting that "the Board awarded service connection for tinnitus as 'the result of treatment for a service-connected disability'"), rev'd on other grounds, 370 F.3d 1124 (Fed. Cir. 2004); Velez v. West, 11 Vet.App. 148, 157 (1998) (discussing "an implicit secondary-service-connection claim that his gastrointestinal disorder was the result of, inter alia, pain medication taken for his service-connected right-shoulder condition"); Jones v. Brown, 7 Vet. App. 134, 137 (1994)(reviewing Board's denial of service connection for glaucoma as secondary to treatment for blepharoconjunctivitis).

There is conflicting medical evidence on this question. The Board, therefore, must weigh the credibility and probative value of this evidence, and in so doing, may favor one medical opinion over the other. See Evans v. West, 12 Vet. App. 22, 30 (1998) (citing Owens v. Brown, 7 Vet. App. 429, 433 (1995)). The Board must account for the evidence it finds persuasive or unpersuasive and provide reasons for rejecting material evidence favorable to the claim. See Gabrielson v. Brown, 7 Vet. App. 36, 29-40 (1994).

The Veteran submitted a copy of information from the Pocket Guide to Prescription Drugs and a printout from drugs.com. This evidence reflects that diabetes is listed as a potential side effect of Celebrex.

The physician who conducted a September 2004 VA examination opined that the Veteran's diabetes was "more likely not the result" of Celebrex. The examiner explained that although diabetes mellitus has been reported as an adverse effect of Celebrex use, it was "far more likely" that the Veteran had "maturity onset diabetes" because his grandmother had a history of diabetes.

The examiner who conducted an April 2010 VA examination explained that the Veteran took Celebrex for arthritis and back pain from 2003 to 2007, both prior to and during the onset of his diabetes. Although there was a chance of diabetes resulting from the use of Celebrex, there was only a 0.1 percent to 2 percent incidence. Also, the Veteran's mother had type II diabetes and the Veteran was markedly overweight with a weight of 251 pounds and a body mass index (BMI) of 35.08. In light of the Veteran's family history, his lifestyle of marked obesity, and the very tiny risk of developing type II diabetes due to the use of Celebrex, it was not likely ("not at least as likely as not") that his use of Celebrex caused his diabetes. Rather, it was likely ("at least as likely as not") that his diabetes was secondary to family history and his marked obesity.

In November 2012, the physician who conducted the April 2010 VA examination re-reviewed the Veteran's claims file and opined that "the claimed condition, which clearly and unmistakably existed prior to service, was aggravated beyond its natural progression by an in-service injury, event, or illness." The physician reasoned that the Veteran was treated for Ross River viral syndrome with various medications (i.e., Motrin, Dicalcid, Sudofed, Robitussin, Amoxicillin, Actifed, Indocin, Erythromycin, Clinoril, Naprosyn, Anaprox, Oxicillin), but that none of these medications caused diabetes. The Veteran also took Celebrex for a lumbosacral strain (arthritis) between 2003 and 2007. Medical literature indicated that there is a 0.1 percent to 2 percent increased incidence of diabetes mellitus for those taking Celebrex. It is therefore "at least as likely as not that the Celebrex caused diabetes."

In January 2013, the April 2010 examiner again reviewed the Veteran's claims file and opined that it was not likely ("less likely as not") that Celebrex caused his diabetes. This opinion was based on the fact that medical literature indicates that the presence of a family history "is an increase risk factor in developing diabetes." Obesity is also a risk factor for the development of diabetes. The Veteran had both of these risk factors.

The April 2010 examiner again reviewed the Veteran's claims file in June 2013 and opined that it was not likely ("less likely as not") that his diabetes mellitus was caused by Celebrex. The physician noted that endocrine side effects (including diabetes mellitus, hypercholesterolemia, and hyperglycemia) have been reported in less than 2 percent of patients and that hypoglycemia has been reported in less than 0.1 percent of patients. Information from the Food and Drug Administration reflected that a study of diabetes mellitus among people who take Celebrex was conducted. This study analyzed the time on Celebrex when people have diabetes, the gender and age of these people, the severity of the diabetes, how they recovered, and common conditions and drugs used besides Celebrex. The physician also provided general information pertaining to Celebrex (i.e., its composition, uses, and common side effects) and diabetes. The physician concluded that the Veteran was "at increased risk factor because of a family history of diabetes and because of his diabetes." Therefore, it was not likely ("less likely as not") that Celebrex caused his diabetes.

In an April 2014 email, T.R. (a person with unknown medical expertise) reported that he reviewed the Veteran's claims file and he noted that the Veteran took Celebrex for his service-connected residuals of multiple joint arthritis from Ross River virus between 2003 and 2007 and that he was diagnosed as having type II diabetes in 2004. T.R. concurred with the medical opinion that it was not likely ("less likely as not") that Celebrex caused the Veteran's diabetes, but he did not provide any specific explanation or rationale for this opinion.

The physician who conducted the January 2016 VA examination opined that the Veteran's diabetes was "at least as likely as not (50 percent or greater probability) incurred in or caused by the claimed in-service injury, event, or illness." In support of this opinion, the physician provided an explanation of the Veteran's overall medical history (including his history of Ross River virus in approximately 1983) and the medications that were used to treat the symptoms associated with the Ross River virus and its residuals (i.e., Dicalcid, nonsteroidal anti-inflammatory agents (NSAIDs) (including Motrin and Clinoril), felodipine, and Vicodin). VA treatment records dated from the late 1990s to early 2006 showed a history of Ross River virus with chronic joint pain, which was treated with Celebrex in June 2000. The Veteran was diagnosed as having diabetes in 2004 after elevated hemoglobin A1c values were recorded. Overall, he was treated with various different NSAIDs for chronic joint pain following Ross River virus. In addition, he appeared to have received treatment with an opiate medication at different times for the same disability.

Moreover, the package insert for Celebrex lists hyperglycemia as an adverse reaction that occurred in 0.1 percent to 1.9 percent of patients treated with Celebrex. This finding indicates that hyperglycemia occurred at that frequency in patients being evaluated for their tolerance of Celebrex, but it does not necessarily indicate causation of hyperglycemia by Celebrex, other NSAIDs, or opiate pain relievers. The use of Celebrex, others NSAIDs, or opiate medications is not considered to be a risk factor for developing type II diabetes according to medical literature (UpToDate). The medical literature lists medications that can impair glucose tolerance or cause overt diabetes mellitus, but Celebrex, other NSAIDs, and opiate medications are not on that list. A search of the medical literature using the Medline database did not reveal any research studies suggesting that Celebrex, other NSAIDs, or opiates can cause diabetes. In one study, treatment with salicylate improved glycemic control in patients with diabetes. The Veteran weighed approximately 245 pounds and his BMI (34.2) was consistent with obesity. His mother had a diagnosis of type II diabetes at approximately age 63. Thus, his current obesity and family history are the most likely causes of his diabetes.

The September 2004 opinion is of limited probative value because, as noted by the parties to the Joint Motion, the opinion does not include a rationale for the finding that the Veteran's diabetes was more likely attributable to his family history than to Celebrex. Also, the examiner mistakenly indicated that the Veteran's grandmother (as opposed to his mother) had a history of diabetes, did not acknowledge the fact that the Veteran's mother was diagnosed as having diabetes at the same time that she was diagnosed as having cancer and that the Veteran was only one of nine children to have developed diabetes, and did not discuss the possibility that "other health or lifestyle factors" could have caused the diabetes. The April 2010, January and June 2013, and January 2016 opinions are similarly of somewhat limited probative value because they are partially based on the Veteran's family history of diabetes, but do not acknowledge that the Veteran's mother was diagnosed as having diabetes at the same time that she was diagnosed as having cancer or that the Veteran was only one of nine children to develop diabetes (as noted by the parties to the Joint Motion).

The June 2013 and January 2016 opinions are also of limited probative value due to the wording of rationale and opinion, respectively. Specifically, the physician who provided the June 2013 opinion concluded that the Veteran was "at increased risk factor because of a family history of diabetes and because of his diabetes." Also, although the rationale that accompanies the January 2016 opinion addresses whether the Veteran's diabetes was caused by medications used to treat the residuals of Ross River virus (including Celebrex), the specific opinion that was provided pertains to whether the diabetes was directly related to service (i.e., the diabetes was "at least as likely as not (50 percent or greater probability) incurred in or caused by the claimed in-service injury, event, or illness.")

Moreover, the April 2014 opinion is of little, if any, probative value because it is unclear as to what medical experience the opinion provider possessed and no specific explanation or rationale was provided for the opinion. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008) (most of the probative value of a medical opinion comes from its reasoning; threshold considerations are whether the person opining is suitably qualified and sufficiently informed). 

The rationale that accompanies the November 2012 opinion includes a specific opinion that it was "at least as likely as not that the Celebrex caused diabetes." This opinion was based on the fact that the Veteran took Celebrex for a lumbosacral strain (arthritis) (the Veteran is service-connected for a low back strain as a residual of Ross River virus) between 2003 and 2007 and that medical literature indicated that there is a 0.1 percent to 2 percent increased incidence of diabetes mellitus for those taking Celebrex. As this opinion was based upon a review of the Veteran's medical records and reported history and is accompanied by a specific rationale that is consistent with the evidence of record, the opinion is entitled to substantial probative weight. See Id.

In light of the above opinions and the fact that some medical literature reflects that diabetes is a potential side effect of Celebrex (albeit a small possibility), the Board finds that the evidence is approximately evenly balanced on the question of whether the Veteran's diabetes was caused by the use of Celebrex for his service-connected residuals of Ross River virus with multiple joint arthritis. The reasonable doubt created by this relative equipoise in the evidence must be resolved in favor of the Veteran; therefore, entitlement to service connection for diabetes mellitus is warranted on a secondary basis. 38 U.S.C.A. § 5107 (b); 38 C.F.R. § 3.102.


ORDER

Entitlement to service connection for diabetes mellitus type II, secondary to medications prescribed for service-connected residuals of Ross River virus with multiple joint arthritis, is granted.



____________________________________________
Jonathan Hager
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs